UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JUSTIN ARMINTROUT AND DEAN ARMINTROUT,<br><br>      Plaintiffs,<br>  v.<br><br>CHICAGO TITLE INSURANCE COMPANY,<br><br>      Defendant. | CASE NO. 2:22-cv-00627-LK<br><br>ORDER GRANTING MOTION TO REMAND AND DENYING MOTION FOR SUMMARY JUDGMENT AS MOOT |

This matter comes before the Court on a motion to remand by Plaintiffs Justin and Dean Armintrout (the "Armintrouts"). Dkt. No. 7. For the reasons explained below, the Court grants the motion.

**I.  BACKGROUND**

This action arises from the Armintrouts' discovery that their neighbor claimed ownership a 127-square-foot portion of a portion of a property they purchased in 2018. Dkt. No. 1-2 at 3. In July 2020, the neighbor filed suit to quiet title, and the Armintrouts tendered defense and indemnity of that action to Chicago Title Insurance Company ("CTIC"), with whom they have a title

ORDER GRANTING MOTION TO REMAND AND DENYING MOTION FOR SUMMARY JUDGMENT AS MOOT - 1

insurance policy. *Id.* at 3–4. The quiet title action was eventually resolved through a settlement, and on April 7, 2021, the Armintrouts filed a claim under their title insurance policy for the loss of the 127-square-foot area in the settlement. *Id.* at 3–5; Dkt. No. 4 at 52–54. After several months passed, the Armintrouts' frustration with CTIC and their title insurance agent, Chicago Title Company of Washington ("CTCW"), culminated in a lawsuit. Dkt. No. 1-1 at 4–5.

The Armintrouts filed suit against CTIC and CTCW in King County Superior Court on September 15, 2021 for declaratory judgment, breach of contract, and violations of the Washington Insurance Fair Conduct Act ("IFCA"), Wash. Rev. Code § 48.30.015, and the Washington Consumer Protection Act, Wash. Rev. Code §§ 19.86.010–19.86.920. Dkt. No. 1-1.

On October 6, 2021, CTIC provided the Armintrouts with its coverage decision, finding that it owed $86,500 under the policy rather than the $469,282 the Armintrouts sought, Dkt. No. 4 at 53, 108, and sent them a check for that amount (along with an additional $7,530 for their other costs, *id.*) on October 15, 2021, Dkt. No. 1-2 at 6–7. CTIC and CTCW answered the Armintrouts' initial complaint and filed a counterclaim approximately one week later on October 15, 2021. Dkt. No. 4 at 26–128.

In March 2022 after the parties exchanged written discovery, the Armintrouts amended their complaint to describe CTIC's coverage decision and to add a claim for bad faith against both CTIC and CTCW. Dkt. No. 4 at 139, 157–59. The Armintrouts also added allegations about an apparent conflict of interest arising from CTIC's appointment of counsel from its in-house litigation department to represent them in the quiet title action. *Id.* at 155.

In both their original and amended complaint, the Armintrouts did not distinguish between CTIC and CTCW in their causes of action and factual allegations, instead referring to them

ORDER GRANTING MOTION TO REMAND AND DENYING MOTION FOR SUMMARY JUDGMENT AS MOOT - 2

collectively as "Chicago Title" throughout. *See generally* Dkt. Nos. 1-1–1-2.[1]

On April 8, 2022, CTIC and CTCW moved for judgment on the pleadings, seeking to dismiss CTCW as a party. Dkt. No. 7 at 2. Despite the Armintrouts' opposition, Dkt. No. 4 at 619–28, the superior court granted the motion on May 6, 2022, Dkt. No. 1-3 at 3. CTIC removed the case to this Court on May 9, 2022. Dkt. No. 1 at 8.

## II.     LEGAL STANDARD

Removal of a civil action to federal district court is proper when the federal court would have original jurisdiction over the state court action. 28 U.S.C. § 1441(a). Federal jurisdiction exists over all civil actions where the matter in controversy exceeds $75,000 and the action is between citizens of different states. 28 U.S.C. § 1332(a). For diversity jurisdiction to apply, however, there must be complete diversity among the parties, and, as a general rule, if one or more plaintiffs are citizens of the same state as one or more defendants, federal diversity jurisdiction is absent. *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 & n.3 (1996).

The Ninth Circuit "strictly construe[s] the removal statute against removal jurisdiction," and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). "The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." *Id*. Doubts as to removability must be resolved in favor of remanding the case to state court. *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003).

## III.     DISCUSSION

CTIC removed this action after the sole non-diverse defendant, CTCW, was dismissed in state court on a motion for judgment on the pleadings. The Armintrouts argue that this Court should

---

[1] Although CTCW is no longer a party to this case, the Court also refers to CTIC and CTCW collectively as "Chicago Title" when referring to actions taken by both defendants before CTCW's dismissal.

ORDER GRANTING MOTION TO REMAND AND DENYING MOTION FOR SUMMARY JUDGMENT AS MOOT - 3

remand this case because (1) CTIC's removal was untimely and (2) CTIC was not entitled to remove in the first instance.

A.  **CTIC's Removal Was Timely**

Whether CTIC's removal was timely depends on when the removal clock started to run. 28 U.S.C. § 1446(b) provides two 30-day windows during which a case may be removed—during the first 30 days after the defendant receives the initial pleading or during the first 30 days after the defendant receives a paper "from which it may first be ascertained that the case is one which is or has become removable" if "the case stated by the initial pleading is not removable." 28 U.S.C. § 1446(b)(1), (b)(3). CTIC argues that the clock started to run when it received the Armintrouts' opposition to its motion for judgment on the pleadings on April 25, 2022. Dkt. No. 20 at 5. The Armintrouts argue that the 30-day period was instead triggered by CTIC's receipt of the initial complaint on September 21, 2021 because its fraudulent joinder argument was ascertainable from the face of the complaint. Dkt. No. 7 at 6–8.

Acknowledging that "it is not uncommon for a state court pleading to omit the necessary facts needed to determine diversity," the Ninth Circuit has held that "notice of removability under § 1446(b) is determined through examination of the four corners of the applicable pleadings, not through subjective knowledge or a duty to make further inquiry." *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 693–94 (9th Cir. 2005). The test is not whether the initial pleading "clearly reveal[s] that the case is *not* removable"; rather, "the first thirty-day period for removal in 28 U.S.C. § 1446(b) only applies if the case stated by the initial pleading *is* removable on its face." *Id.* at 694 (emphases added); *see also id.* at 695 ("[T]he ground for removal must be revealed affirmatively in the initial pleading in order for the first thirty-day clock under § 1446(b) to begin."). Otherwise, "defendants would be faced with an unreasonable and unrealistic burden to

determine removability within thirty days of receiving the initial pleading." *Id.* at 694.[2]

> Thus, the statute expressly encompasses the case in which the actual facts supporting federal jurisdiction remain unaltered from the initial pleading, but their existence has been *manifested* only by later papers, revealing the grounds for removal for the first time. It thus appears that the statute does not preclude defendants from removing a case where their discovery of the grounds of federal jurisdiction is belated because facts disclosing those grounds were inadequately or mistakenly stated in the complaint.

*Id.* at 695 (quoting *Lovern*, 121 F.3d at 162) (emphasis in original); *see also id.* at 698 ("By assuring that removal occurs once the jurisdictional facts supporting removal are evident, we also ensure respect for the jurisdiction of state courts.").

Here, the Armintrouts' complaints are not models of clarity. After spending several pages on factual allegations that do not specify which "Chicago Title" they refer to—CTIC or CTCW—the Armintrouts launch into their causes of action. *See* Dkt. Nos. 1-1–1-2. These too use sweeping language: each one incorporates the prior 33-plus paragraphs and broadly states that "Chicago Title" committed some wrong without connecting the alleged violation to specific facts. *See* Dkt. No. 1-1 at 5–7; Dkt. No. 1-2 at 7–9. The CPA claim in particular asserts that "Chicago Title's acts and omissions described [in the preceding 55 paragraphs] violate, among other statutes and regulations, WAC 284-30-330(1), (2), (3), (5); WAC 284-30-330(11); WAC 284-30-350, WAC 284-30-360; WAC 284-30-370; and WAC 284-30-380." Dkt. No. 1-2 at 8.[3] The complaints fail to specify what exactly CTCW did to spur claims for declaratory relief, breach of contract, insurer bad faith, or violations of IFCA or the CPA, and the Armintrouts only later clarified that despite

---

[2] *See also Lovern v. General Motors Corp.*, 121 F.3d 160, 163 (4th Cir. 1997) ("If a defendant were required to file a notice of removal within 30 days after the service of the initial pleading, even where that pleading did not reveal a ground for removal, he would often be faced with an intractable dilemma of either risking Rule 11 sanctions for noticing removal without making an adequate inquiry or forgoing removal altogether. The statute did not intend to put a defendant to this choice.").

[3] The CPA claim in the Armintrouts' initial complaint is largely identical to the one in their amended complaint, except that it makes no mention of Section 284-30-350 or Subsection (1) of Section 284-30-330 of the Washington Administrative Code. Dkt. No. 1-1 at 7.

ORDER GRANTING MOTION TO REMAND AND DENYING MOTION FOR SUMMARY JUDGMENT AS MOOT - 5

including both CTIC and CTCW in all five causes of action in their complaint, their only real claim against CTCW was a CPA claim stemming from its violation of Section 284-30-350(2) of the Washington Administrative Code—a subsection that is never mentioned in their complaints. Dkt. No. 4 at 624; *see generally* Dkt. Nos. 1-1–1-2. It was not until the Armintrouts responded to Chicago Title's Motion for Judgment on the Pleadings under Washington State Superior Court Civil Rule 12(c) that they provided any specifics on CTCW's alleged violation of the CPA. Dkt. No. 4 at 624–25; *see also* Dkt. No. 20 at 3 (noting that the Armintrouts did not provide factual information "pertaining specifically to CTCW engaging in 'concealment' or any other wrongful conduct" during discovery).

Based on the vague allegations in the Armintrouts' complaints, the Court cannot say that "the ground for removal [was] revealed affirmatively in the initial pleading." *Harris*, 425 F.3d at 695. Instead, the "paper from which it [could] first be ascertained that the case [wa]s one which [had] become removable," 28 U.S.C.A. § 1446(b)(3), was the Armintrouts' April 24, 2022 brief in opposition to Chicago Title's motion for judgment on the pleadings, Dkt. No. 4 at 619–27. CTIC's May 9, 2022 removal was therefore timely.[4] However, as explained below, CTIC has failed to show clearly and convincingly that CTCW was fraudulently joined.

**B.    This Action Was Not Removable Because Chicago Title Does Not Show that the Armintrouts Fraudulently Joined CTCW**

CTIC contends that remand is inappropriate because the Armintrouts fraudulently joined CTCW and the remaining parties are properly before the Court under 28 U.S.C. § 1332. Dkt. No. 20 at 6–8. The Armintrouts argue that they stated a valid claim against CTCW in their complaint,

---

[4] The Armintrouts improperly submitted new evidence in support of their timeliness argument in their reply brief. Dkt. No. 22 at 2 ¶¶ 3–4. Even if the Court were to consider this evidence, it does not change the result. The March 25, 2022 call was made in conjunction with asking the Armintrouts to voluntarily dismiss CTCW as a party, *id.*, and does not alter the fact that the case stated by the Armintrouts' complaints was not removable on its face.

ORDER GRANTING MOTION TO REMAND AND DENYING MOTION FOR SUMMARY JUDGMENT AS MOOT - 6

and therefore it was not fraudulently joined. Dkt. No. 7 at 5–6; Dkt. No. 21 at 2.

Diversity removal requires complete diversity, but fraudulently joined defendants do not factor into a district court's diversity analysis. *Grancare, LLC v. Thrower by & through Mills*, 889 F.3d 543, 548 (9th Cir. 2018) ("In determining whether there is complete diversity, district courts may disregard the citizenship of a non-diverse defendant who has been fraudulently joined.").[5] Fraudulent joinder exists where the plaintiff (1) has committed "actual fraud in the pleading of jurisdictional facts," or (2) is unable to "establish a cause of action against the non-diverse party in state court." *Grancare*, 889 F.3d at 548 (quoting *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1044 (9th Cir. 2009)). The latter standard is satisfied if the defendant "cannot be liable on any theory." *Id.* (quoting *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998)); *see also Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001) (fraudulent joinder exists where plaintiff "fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state") (cleaned up). The defendant bears the burden of showing fraudulent joinder by clear and convincing evidence, and because "there is a general presumption against finding fraudulent joinder," it is a "heavy burden" to carry. *Grancare*, 889 F.3d at 548; *see also Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007).[6]

However, "if there is a *possibility* that a state court would find that the complaint states a

---

[5] It is undisputed that the state court's dismissal of CTCW, Dkt. No. 1-3, does not establish diversity. *See Gould v. Mut. Life Ins. Co. of New York*, 790 F.2d 769, 773 (9th Cir. 1986) ("The [voluntary/involuntary] rule does not allow creation of diversity removal jurisdiction by court order dismissing the nondiverse defendant[.]"); Dkt. No. 7 at 4–5; Dkt. No. 20 at 6.

[6] CTIC argues that the Armintrouts conceded the fraudulent joinder issue because their motion to remand "offer[s] no arguments or case law to oppose removal" on that basis. Dkt. No. 20 at 6. However, the Armintrouts argued in their motion to remand that they alleged a "valid Consumer Protection Act claim against CTCW." Dkt. No. 7 at 5. Ultimately, the burden is on CTIC to prove fraudulent joinder by clear and convincing evidence, so the Armintrouts' failure to make any substantive argument to this end in their original motion is not fatal. *Hamilton Materials*, 494 F.3d at 1206.

ORDER GRANTING MOTION TO REMAND AND DENYING MOTION FOR SUMMARY JUDGMENT AS MOOT - 7

cause of action against any of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." *Grancare*, 889 F.3d at 548 (quoting *Hunter*, 582 F.3d at 1046 (emphasis in original)).[7] "Because the purpose of the fraudulent joinder doctrine is to allow a determination whether the district court has subject matter jurisdiction, the standard is similar to the 'wholly insubstantial and frivolous' standard for dismissing claims under Rule 12(b)(1) for lack of federal question jurisdiction." *Grancare*, 889 F.3d at 549; *see also id.* ("[T]he test for fraudulent joinder and for failure to state a claim under Rule 12(b)(6) are not equivalent. A claim against a defendant may fail under Rule 12(b)(6), but that defendant has not necessarily been fraudulently joined.").

In determining whether there is a possibility that a state court would find that the Armintrouts' complaint states a cause of action against CTCW, *id.* at 548, the King County Superior Court's dismissal of CTCW is not determinative. *Moran v. Monitor Liab. Managers, LLC*, No. C12-01656L, 2012 WL 6098361, at *2 (W.D. Wash. Dec. 7, 2012) ("[A] federal court considering fraudulent joinder is not bound by the state trial court's dismissal."); *see also Knudson v. Sys. Painters, Inc.*, 634 F.3d 968, 978 (8th Cir. 2011) ("Although the question of whether a plaintiff has fraudulently joined a defendant requires a close analysis of state law, this question is ultimately one of federal law.").[8] Instead, the court "must engage in an act of prediction: is there

---

[7] *See also Albi v. St. & Smith Publications*, 140 F.2d 310, 312 (9th Cir. 1944) ("A merely defective statement of the plaintiff's action does not warrant removal . . . . It is only where the plaintiff has not, in fact, a cause of action against the resident defendant, and has no reasonable ground for supposing he has, and yet joins him in order to evade the jurisdiction of the federal court, that the joinder can said to be fraudulent[.]"); *Perez v. AT & T Co.*, 139 F.3d 1368, 1380–81 (11th Cir. 1998) (in fraudulent joinder inquiry, federal courts do not weigh merits of plaintiff's claim beyond determining whether the claim is arguable under state law); *Mayes v. Rapoport*, 198 F.3d 457, 463–64 (4th Cir. 1999) ("glimmer of hope" that plaintiff can establish a claim is sufficient to preclude application of the fraudulent joinder doctrine).

[8] The parties do not appear to dispute this point. Dkt. No. 20 at 6; Dkt. No. 21 at 6–7. Although CTIC asserts that "the King County Superior Court has already made th[e] determination" that the Armintrouts failed to state a claim, it concedes that "[t]he order of dismissal is irrelevant for purposes of evaluating whether the Armintrouts fraudulently joined CTCW." Dkt. No. 20 at 6, 7.

ORDER GRANTING MOTION TO REMAND AND DENYING MOTION FOR SUMMARY JUDGMENT AS MOOT - 8

any reasonable possibility that a state court would rule against the non-diverse defendant? If a state court has come to judgment, is there any reasonable possibility that the judgment will be reversed on appeal?" *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir. 1992); *see also Marshall v. Manville Sales Corp.*, 6 F.3d 229, 233 (4th Cir. 1993) ("A claim need not ultimately succeed to defeat removal; only a possibility of a right to relief need be asserted.").

The Court begins its analysis with the state standard for dismissal. Washington state courts apply a less exacting factual requirement than the federal courts: while federal courts require facts demonstrating the "facial plausibility" of a claim, *Aschcroft v. Iqbal*, 556 U.S. 662, (2009), a complaint is factually sufficient in Washington if facts could be established to support the allegations in the complaint. *McCurry v. Chevy Chase Bank, FSB*, 233 P.3d 861, 863–64 (Wash. 2010) (en banc) (declining to adopt the federal standard); *see also* Wash. State Sup. Ct. Civ. R. 12 (hereinafter "CR 12").[9] Thus, whether the Armintrouts fraudulently joined CTCW turns on whether they obviously failed to state a claim against CTCW under CR 12 such that their claims against it were "wholly insubstantial and frivolous." *Grancare*, 889 F.3d at 549.

As discussed above, the Armintrouts ultimately contend that they pled a single valid claim against CTCW for violating Section 284-30-350(2) of the Washington Administrative Code. Dkt. No. 4 at 624. Their complaint alleges that when the Armintrouts "asked Chicago Title what the Policy covers as Actual Loss . . . Chicago Title failed to respond to [their] questions[.]" Dkt. No. 1-2 at 4. The Armintrouts later clarified that this allegation formed the basis of their CPA claim against both CTIC and CTCW, and that CTCW violated the CPA by refusing to answer their questions about "actual loss" and instead referring them to CTIC. Dkt. No. 4 at 625, 632.

---

[9] Washington state courts "treat a CR 12(c) motion for judgment on the pleadings identically to a CR 12(b)(6) motion to dismiss for failure to state a claim": "the purpose is to determine if a plaintiff can prove any set of facts that would justify relief." *Freedom Found. v. Teamsters Loc. 117 Segregated Fund*, 480 P.3d 1119, 1131 (Wash. 2021) (quoting *P.E. Sys., LLC v. CPI Corp.*, 289 P.3d 638, 641 (Wash. 2012)).

ORDER GRANTING MOTION TO REMAND AND DENYING MOTION FOR SUMMARY JUDGMENT AS MOOT - 9

CTIC admits that the Armintrouts' complaint "presented their factual allegations with sufficient plausibility," Dkt. No. 20 at 4, but argues that the failure of their CPA claim against CTCW is nevertheless obvious, Dkt. No. 20 at 7. It contends that this is so for two reasons. First, as a title insurance agent, CTCW "can only sell, solicit, or negotiate insurance on behalf of the insurer," and therefore "does not owe any duties to the Armintrouts." *Id.* Second, the Armintrouts cannot show that CTCW "concealed" anything from them because CTCW referred them to CTIC and emailed them a copy of their policy. *Id.* These arguments fail to carry CTIC's burden.

It is not true that title insurance agents owe no duties to first party claimants such as the Armintrouts. Indeed, Section 284-30-350(2) obligates title insurance agents not to "conceal from first party claimants benefits, coverages or other provisions of any insurance policy or insurance contract when such benefits, coverages or other provisions are pertinent to a claim." And a breach of this duty satisfies the first three elements of a CPA claim. *See Panag v. Farmers Ins. Co. of Washington*, 204 P.3d 885, 892 (Wash. 2009); *Sparks v. Am. Fam. Mut. Ins. Co.*, No. C18-5038 BHS, 2018 WL 2159921, at *10 (W.D. Wash. May 10, 2018).

In terms of whether the Armintrouts stated a claim against CTCW for concealing coverages pertinent to their claim from them, this Court finds that it is reasonably possible that a state court—or appeals court—could find in the Armintrouts' favor. The Armintrouts make a colorable argument that CTCW's duty under Section 284-30-350(2) ultimately went unfulfilled because the claim handler at CTIC to whom they were directed also failed to answer their inquiry, and because CTCW's duty to answer their questions was separate from its duty to send them a copy of the policy under a different regulation. Dkt. No. 21 at 4–5. The Armintrouts also have asserted that they suffered harm as a result. Dkt. No. 1-2 at 8 ("Chicago Title's violation of Washington's Consumer Protection Act caused injury to the Armintrouts' business or property in an amount to be proven at trial."); Dkt. No. 4 at 632 ("Having not received any substantive response from CTCW

or CTIC, we retained insurance coverage counsel at our expense.").

Furthermore, this Court would need to conduct a more searching inquiry into Washington insurance law to resolve CTIC's contention that CTCW satisfied its duty not to conceal coverages pertinent to the Armintrouts' claim by referring them to CTIC and emailing them a copy of the policy in response to their questions regarding "actual loss." Regardless of the ultimate merits of Chicago Title's position, the need for such an inquiry illustrates that the claim against CTCW was not "wholly insubstantial and frivolous." *See Grancare*, 889 F.3d at 548–49 ("We have declined to uphold fraudulent joinder rulings where a defendant raises a defense that requires a searching inquiry into the merits of the plaintiff's case, even if that defense, if successful, would prove fatal."); *Batoff v. State Farm Insurance Co.,* 977 F.2d 848, 853 (3d Cir. 1992) (if "intricate analysis of state law" is needed to dismiss claim, the claim may not be disregarded for purposes of diversity jurisdiction); *Flores v. ABM Indus. Grps., LLC*, No. 8:18-CV-01483-JLS-KES, 2018 WL 6428026, at *2 (C.D. Cal. Dec. 7, 2018) ("'[F]raudulent' joinder should not be confused with joinder of a nondiverse party against whom a plaintiff's claims are ultimately revealed to be fatally weak or otherwise unsubstantiated.").

In light of the Court's obligation to reject federal jurisdiction "if there is any doubt as to the right of removal in the first instance," *Gaus*, 980 F.2d at 566, as well as the high burden of proof on Chicago Title and the presumption against fraudulent joinder, remand is warranted.

**C.    The Armintrouts' Request for Attorney's Fees, Costs, and Expenses Is Denied**

"Absent unusual circumstances, a court may award costs and attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Grancare*, 889 F.3d at 552. Removal is not objectively unreasonable "solely because the removing party's arguments lack merit, or else attorney's fees would always be awarded whenever remand is granted." *Lussier v. Dollar Tree Stores, Inc.*, 518 F.3d 1062, 1065 (9th Cir.

ORDER GRANTING MOTION TO REMAND AND DENYING MOTION FOR SUMMARY JUDGMENT AS MOOT - 11

2008). "Congress has unambiguously left the award of fees to the discretion of the district court." *Moore v. Permanente Med. Grp., Inc.*, 981 F.2d 443, 446 (9th Cir. 1992).

Although CTIC has lost the argument on remand, its removal of this action was not objectively unreasonable. It had a non-frivolous argument that the claims against CTCW were so weak as to make CTCW a sham defendant, particularly given the lack of clarity in the Armintrouts' complaint and their abandonment of all but a single claim against CTCW in their opposition to the motion for judgment on the pleadings. The Court thus declines to award attorney's fees to the Armintrouts.

## IV.  CONCLUSION

Because CTCW was not fraudulently joined, this action is not removable and the motion for remand is GRANTED. Dkt. No. 7. The Armintrouts' request for attorney's fees, costs, and expenses under 28 U.S.C. § 1447(c) is DENIED. Because this matter is remanded, the Court DENIES as moot CTIC's Motion for Partial Summary Judgment, Dkt. No. 10.

This matter is REMANDED to King County Superior Court. The Clerk of the Court is directed to take the steps necessary to remand the case to King County Superior Court.

Dated this 28th day of November, 2022.

Lauren King
United States District Judge